UNITED STATES of America, Appellee,

v.

Stephen C. MANSAW, Appellant.

UNITED STATES of America, Appellee,

v.

Bryan R. MANSAW, Appellant.

UNITED STATES of America, Appellee,

v.

Darrel Lester CLAY, Appellant.

UNITED STATES of America, Appellee,

v.

Pamela HOLLIMAN, Appellant.

Nos. 82–1699, 82–1715, 82–1716
and 82–1717.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 16, 1982.

Decided Aug. 10, 1983.

Certiorari Denied Nov. 7 and Nov. 14, 1983.

See 104 S.Ct. 403, 434.

Christopher C. Harlan, Kansas City, Mo. by Albert Moskowitz, Asst. Federal Public Defender, W.D. Missouri, Kansas City, Mo., David P. Dyer, Thomas M. Bradshaw, Kansas City, Mo. by William T. Session, Kansas City, Mo., for appellant.

Robert G. Ulrich, U.S. Atty., J. Whitfield Moody, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Stephen C. Mansaw, Bryan R. Mansaw, Darrel L. Clay, and Pamela Holliman appeal from final judgments entered in the District Court for the Western District of Missouri[1] upon jury verdicts finding them guilty of armed bank robbery in violation of 18 U.S.C. §§ 2113(a), (d), 2 (count I) and interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. §§ 2312, 2 (count II). Stephen Mansaw, Bryan Mansaw and Pamela Holliman were each sentenced to twenty years imprisonment on count I and five years probation on count II, to be served consecutively to the term of imprisonment. Darrel Clay was sentenced to twenty-five years imprisonment on count I and to five years probation on count II, to be served consecutively to the term of imprisonment.

For reversal Stephen Mansaw argues that the district court improperly limited the scope of cross-examination of government witness Charmeana Lee; Bryan Mansaw argues that the district court improperly refused to admit into evidence a statement made by codefendant Clay; Stephen Mansaw and Darrel Clay argue that the district court erred in admitting into evidence an edited tape and transcript of a police radio broadcast; all appellants argue that the district court erred in denying their respective motions for severance; Bryan Mansaw and Pamela Holliman argue that the district court erred in refusing to give their proffered lesser included offense instruction; and Pamela Holliman argues that the district court erred in denying her motion for judgment of acquittal on count II for insufficient evidence. For the reasons discussed below, we find. no merit in any of these allegations and affirm the judgments of the district court.

*Facts*

The government's principal witness was one of the bank robbers, Charmeana Lee.[2] Viewed in the light most favorable to the jury verdicts, the evidence showed that during the evening of January 14, 1982, Charmeana Lee, Bryan and Stephen Mansaw, Pamela Holliman, Darrel Clay, and Antoinette (Tony) Johnson discussed robbing a bank the next day. During the meeting Bryan Mansaw wiped off a sawed-off shotgun and a pistol in preparation for the robbery. The next afternoon, January 15, 1982, these six individuals drove from Kansas City, Kansas, to Riverside, Missouri, in a late model dark red Oldsmobile Cutlass. They drove into a shopping center parking lot, looking for a car to steal and use as the getaway car. They found a green Mercury Cougar. Darrel Clay, using tools supplied by Stephen Mansaw, started the Cougar. Both cars then drove to a restaurant parking lot located near the Riverside Bank. At this point Bryan Mansaw was driving the Cougar; Darrel Clay, Charmeana Lee and Pamela Holliman were the passengers. Stephen Mansaw was driving the. dark red Cutlass; Tony Johnson was his passenger. The cars then drove around in front of the bank. Tony Johnson entered the bank, attempted to make a banking transaction and then quickly left; she was evidently a lookout. Darrel Clay, Charmeana Lee and Pamela Holliman actually entered the bank. According to Lee, Darrel Clay had the shotgun and Ms. Holliman the pistol. They stole about $5,000. They then left the bank and got into the waiting green Cougar, still being driven by Bryan Mansaw. The two cars then drove away, the dark red Cutlass driven by Stephen Mansaw in the lead.

Several minutes later a Kansas City, Kansas, police officer, Sgt. Dennis Barber, noticed a dark red Oldsmobile Cutlass, fol-

1. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

2. Lee pleaded guilty to bank robbery, 18 U.S.C. § 2113(a), and testified for the government in appellants' trial. The government dismissed the stolen car count (18 U.S.C. § 2312). Lee was sentenced to seven years imprisonment pursuant to 18 U.S.C. § 4205(a).

lowed closely by a green Cougar, approaching his patrol car at a high rate of speed. The cars made an abrupt left turn in front of him. Sgt. Barber testified that he recognized the driver of the dark red Oldsmobile and identified him as Stephen Mansaw. Sgt. Barber pursued the cars and eventually chased the green Cougar into a dead-end street. The occupants abandoned the car and ran. Sgt. Barber chased and arrested Bryan Mansaw. After additional police officers arrived on the scene, Pamela Holliman and Charmeana Lee were found in an abandoned house nearby. Darrel Clay was later arrested in a house in the neighborhood. Stephen Mansaw turned himself in after learning of the indictment. The shotgun, stolen money and clothing worn by the bank robbers were found near the abandoned green Cougar.

*Limitation of Cross-Examination*

Stephen Mansaw argues that the district court improperly limited the scope of cross-examination of government witness Lee. Counsel sought to question Lee about her involvement in the armed robbery of a Rax Roast Beef restaurant in Kansas City, Kansas, the night before the Riverside bank robbery and about her statement implicating Stephen and Bryan Mansaw and Pamela Holliman in the Rax robbery. Stephen Mansaw argued that Lee's statement incriminating him in the Rax robbery was the result of bias and that this fact strongly suggested that her statement incriminating him in the bank robbery was also the result of bias. The other defendants strenuously objected to this proposed cross-examination.

The district court held an *in camera* hearing about the scope of proposed cross-examination about the Rax robbery and Lee's answers. Following discussion with counsel for all defendants, the government and Lee, the district court permitted Stephen Mansaw's counsel to ask Lee two general questions about the existence of a pending state criminal charge for the Rax robbery and whether she hoped for leniency with respect to that charge in light of her testimony in the bank robbery case.[3] The district court, however, refused to permit counsel for Stephen Mansaw to ask Lee questions which tended to suggest that her statement incriminating Stephen Mansaw was false because the state authorities did not prosecute him for the Rax robbery.[4] The district court concluded that this cross-examination did not show bias.

Ordinarily defense counsel should be permitted wide latitude in the scope of cross-examination of government witnesses about matters relevant to credibility or bias. Fed.R.Evid. 608; *e.g., United States v. Garcia,* 647 F.2d 794, 795 (8th Cir.), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981); *see generally* 3 D. Louisell & C. Mueller, Federal Evidence §§ 307, 341 (1979). We find no abuse of discretion in the limitation of cross-examination in the present case. The fact that local authorities did not charge Stephen Mansaw with the Rax robbery, despite Lee's incriminating statement, does not in itself show bias or that Lee's statement was false. *Compare United States v. Witschner,* 624 F.2d 840, 844–45 (8th Cir.) (insufficient nexus shown between possible bias of witness and parole status of witness' relative), *cert. denied,* 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d

---

**3.** The questions were: "[I]sn't it true that— also true that you have been charged in Kansas City, Kansas, for the armed robbery of a Rax Roast Beef located at 75th and State Avenue on January 14th, 1982, the night immediately before the robbery of the Riverside Bank?" and "[I]f there were, or is any charge pending against you in connection with the Rax Roast Beef robbery, do you hope that in return for testifying and cooperating with the prosecutor in this case that you will obtain some sort of leniency in connection with the Rax Roast Beef robbery case?" Lee answered both questions with "I don't know."

**4.** The rejected questions were "Didn't you implicate Stephen Mansaw in the Rax Roast Beef robbery?" and "Even though you implicated Stephen Mansaw in the Rax robbery, are you aware that the Kansas City, Kansas, authorities did not bring charges against Steve Mansaw?" In the *in camera* hearing Lee answered both questions by invoking the fifth amendment privilege against self-incrimination. According to counsel for Stephen Mansaw, Stephen Mansaw was considered a suspect in the Rax robbery but was never charged.

291 (1980); *Johnson v. Brewer,* 521 F.2d 556, 562–64 (8th Cir.1975) (sufficient nexus shown between possible bias of witness and fact that witness had on another occasion framed another person). Lee was the principal government witness and was subject to lengthy cross-examination by counsel for all appellants. In particular she was questioned about the plea bargain agreement and the reasons behind her cooperation with the government in the bank robbery prosecution. *See United States v. Quinn,* 543 F.2d 640, 651 (8th Cir.1976).

 Stephen Mansaw also argues that the district court improperly denied counsel an opportunity to cross-examine Lee about her use of aliases and her work as a prostitute. We disagree. The district court permitted cross-examination about Lee's use of aliases. A witness' use of false names or false identities is a proper subject of cross-examination under Fed.R.Evid. 608. *E.g., United States v. Reid,* 634 F.2d 469, 473–74 (9th Cir.1980), *cert. denied,* 454 U.S. 829, 102 S.Ct. 123, 70 L.Ed.2d 105 (1981); *see generally* 3 D. Louisell & C. Mueller, Federal Evidence § 305. The district court properly limited cross-examination about prostitution. A record of misdemeanor prostitution convictions is not a proper subject for impeachment under Fed.R.Evid. 609 and, unlike the use of aliases, has little relevance to credibility as a witness. *E.g., United States v. Wright,* 564 F.2d 785, 791 (8th Cir.1977) (defense counsel cannot impeach government witness under Fed.R.Evid. 609 with misdemeanor prostitution conviction).

### Statement by Codefendant Clay

██ Bryan Mansaw argues that the district court erred in refusing to admit into evidence an out-of-court statement made by codefendant Darrel Clay. At the time of his arrest Clay told one of the arresting police officers that he "only drove the car." According to the government's theory of the case, Bryan Mansaw drove the getaway car. Bryan Mansaw argues that Clay's statement tended to exculpate Mansaw and should have been admitted as an exculpatory statement against penal interest under Fed.R.Evid. 804(b)(3). Bryan Mansaw argues that Clay made the statement spontaneously and voluntarily and that these are corroborating circumstances clearly indicating the trustworthiness of the statement.

We find no abuse of discretion in the district court's refusal to admit Clay's statement into evidence. First, the district court had suppressed the statement as the product of an unlawful entry. *See United States v. Clay,* No. 82–00003–CR–W–9 (W.D.Mo. Mar. 31, 1982) (order granting suppression motion) (Wright, J.). Second, Clay's statement was not in fact exculpatory with respect to Bryan Mansaw's role as the driver of the getaway car. The government's theory of the case was that Clay drove the green Cougar from the shopping center parking lot to the restaurant parking lot and then Bryan Mansaw drove the green Cougar from the restaurant parking lot to the bank and away from the bank. Third, assuming Clay's statement was exculpatory with respect to Bryan Mansaw's role as the driver of the getaway car, the circumstances under which Clay made the statement suggest that the statement was not really against Clay's penal interest at the time it was made. *See United States v. Riley,* 657 F.2d 1377, 1384 (8th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 742, 74 L.Ed.2d 962 (1983); *United States v. Love,* 592 F.2d 1022, 1025–26 (8th Cir.1979). At the suppression hearing and at the supplementary hearing, Clay testified that he was assaulted and threatened by police officers, was not advised of the *Miranda* warnings, and made the statement only because he "wanted to be assured of making it to the ... police station." Under these circumstances Clay's statement, although ostensibly inculpatory, was in fact not against his interest. *See United States v. Riley,* 657 F.2d at 1384. Finally, assuming some corroboration is necessary for exculpatory statements, *see id.* at 1385 n. 12, the evidence showed that Bryan Mansaw was the driver of the getaway car, did not corroborate the exculpatory statement and thus did not indicate the trustworthiness of the statement. *Cf. United States v. Sarmiento-Perez,* 633 F.2d 1092, 1096–97, 1101–02 (5th Cir.1980) (circum-

stances corroborated statement but statement held not to be against interest), *cert. denied,* —— U.S. ——, 103 S.Ct. 77, 74 L.Ed.2d 75 (1982).

*Edited Tape and Transcript of Police Radio Broadcast*

■ Stephen Mansaw and Darrel Clay argue that the district court erred admitting into evidence the edited tape and transcript of the police radio broadcast involving Sgt. Barber's observation of and pursuit of the dark red Cutlass and the green Cougar. Clay argues that the edited tape and transcript were not relevant and were unsupported by proper foundation. Clay also argues that the deletions in the edited tape and transcript were prejudicial because the jury could have inferred that the deletions referred to the defendants. Stephen Mansaw argues that the district court should have admitted the entire tape.

Stephen Mansaw sought to introduce the entire tape of the police radio broadcast in order to impeach Sgt. Barber's testimony that he immediately recognized the driver of the dark red Cutlass as Stephen Mansaw. Counsel argued that Sgt. Barber did not identify the driver as Stephen Mansaw over the police radio and that the tape of the police radio broadcast would show no identification. The other defendants objected to the introduction of the police radio transcript. Following an extensive discussion with counsel, the district court admitted an edited version of the tape and corresponding transcript. References to the names of the defendants were deleted from the tape. Copies of the edited transcript were distributed to the jurors while the edited tape was played. The district court also gave the jury a cautionary instruction about the limited use of the transcripts.

We find no abuse of discretion in the district court's handling of the tape and transcript or decision to admit the edited tape into evidence. The district court essentially followed the guidelines set forth in *United States v. McMillan,* 508 F.2d 101, 104–06 (8th Cir.1974), *cert. denied,* 421 U.S.

916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). Witnesses testified about the type of recording equipment, its working condition, the authenticity of the recording, the deletions from the original master tape, the identity of the speakers, and the limitations of the recording system. The edited tape played to the jury covered the sighting of the speeding cars by Sgt. Barber, his pursuit of the green Cougar, the arrest of Bryan Mansaw, and his call for additional assistance. This part of the police radio broadcast was relevant to Sgt. Barber's observation and pursuit of the two cars, although we question its value as impeachment evidence in view of Sgt. Barber's testimony that he did not broadcast his identification of Stephen Mansaw as the driver of the dark red Cutlass at the time of the pursuit.

*Severance*

All appellants argue that the district court erred in denying their respective motions for severance. Stephen Mansaw argues that his defense was prejudiced by the district court's limitation of cross-examination of government witness Lee. Bryan Mansaw argues that his defense was prejudiced by the district court's refusal to admit the exculpatory statement made by codefendant Clay. Clay, Bryan Mansaw and Holliman argue that they were prejudiced by Lee's testimony about the Rax robbery and by the admission of the edited tape and transcript of the police radio broadcast.

■ Appellants did not renew their motions for severance at the close of the government's case or at the close of all the evidence. Such failure to renew motions of severance is deemed to be a waiver. *E.g., United States v. Reed,* 658 F.2d 624, 629 (8th Cir.1981), *cert. denied,* 455 U.S. 1002, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982); *United States v. Luschen,* 614 F.2d 1164, 1174–75 (8th Cir.), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980). In any event, when considered on the merits, appellants did not make the requisite showing of clear prejudice.[5] *E.g., United States v.*

---

**5.** To establish grounds for reversal, a defend-

ant must show something more than the

*Knife,* 592 F.2d 472, 480 (8th Cir.1979). Appellants' motions for severance are all based upon alleged trial errors that we have found to be without merit. We find no abuse of discretion in the district court's denial of the motions for severance.

*Lesser Included Offense Instruction*

Bryan Mansaw and Pamela Holliman argue that the district court erred in refusing to give their proffered lesser included offense instruction for bank robbery in violation of 18 U.S.C. § 2113(a). Section 2113(a) is a lesser included offense within § 2113(d). *E.g., United States v. Cady,* 495 F.2d 742, 747 & n. 10 (8th Cir.1974). The additional element necessary to constitute armed bank robbery under § 2113(d) is the use of a dangerous weapon or device to put in jeopardy the life of another.[6] *Id.* at 745; *United States v. Short,* 493 F.2d 1170, 1172 (9th Cir.), *cert. denied,* 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275 (1974). Bryan Mansaw and Holliman each argue that the evidence that they possessed or used a dangerous weapon[7] or knew that the others were armed and intended to use the weapons to jeopardize the lives of the bank employees was sufficiently in dispute so that the jury could have found them guilty only of bank robbery in violation of § 2113(a) and not the aggravated offense of armed bank robbery in violation of § 2113(d).

A trial court is required to give a lesser included offense instruction if: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of the lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or defense. *United States v. Thompson,* 492 F.2d 359, 362 (8th Cir.1974) (emphasis omitted); *see Sansone v. United States,* 380 U.S. 343, 349–50, 85 S.Ct. 1004, 1009–10, 13 L.Ed.2d 882 (1965); *United States v. King,* 616 F.2d 1034, 1042 (8th Cir.), *cert. denied,* 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980).

However, there is a duty on the defendant to come forward with some evidence if he [or she] wishes to have the benefit of a lesser included offense instruction;

---

mere fact that his chances for acquittal would have been better had he [or she] been tried separately. [The defendant] must "affirmatively demonstrate that the joint trial prejudiced his [or her] right to a fair trial."

In applying these general principles, this Court has recognized that the fact that evidence may be admissible as to one defendant but not as to another does not alone require that the defendants be given separate trials. Nor is a defendant entitled to severance simply because the evidence against a codefendant may be more damaging than the evidence against him [or her]. Severance is required only where the proof is such that a jury could not reasonably be expected to compartmentalize the evidence as it relates to separate defendants.

*United States v. Knife,* 592 F.2d 472, 480 (8th Cir.1979) (citations omitted).

6. 18 U.S.C. § 2113(a), (d) provide:
 (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . .
 Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

 . . . .

 (d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

7. Bryan Mansaw argues that there was no evidence that he entered the Riverside Bank or that he was armed or used a weapon during the bank robbery. Holliman argues that the bank employees and customers were unable to identify her as the female bank robber who held the pistol and that only Lee identified her as the female robber who held the pistol. Holliman argues that Lee may have been the woman with the gun.

while a judge cannot prevent a jury from rejecting the prosecution's entire case, he [or she] is not obligated to assist a jury in coming to an irrational conclusion of partial acceptance and partial rejection of the prosecution's case.

*United States v. Cady,* 495 F.2d at 748. We have carefully reviewed the record and cannot agree with appellants' argument that the evidence about the use of guns, the element differentiating bank robbery under § 2113(a) and § 2113(d), was sufficiently in dispute so that the jury may consistently have found them innocent of § 2113(d) and guilty only of § 2113(a). The evidence proved beyond a reasonable doubt that Holliman was armed and used the pistol to jeopardize the lives of the bank employees during the bank robbery or that she knew that the others were armed and intended to use the weapons to commit the bank robbery and that she intended to aid them. Similarly, the evidence with respect to Bryan Mansaw proved beyond a reasonable doubt that he knew that the others were armed and intended to use the weapons during the bank robbery and that he intended to aid them by driving the getaway car. The jury could have either found Bryan Mansaw and Holliman not guilty or guilty of armed bank robbery, either as principals or aiders and abettors.[8] *See, e.g., United States v. Short,* 493 F.2d at 1172. The jury found them guilty. We hold that upon the evidence presented in this case the district court did not err in refusing to give the proffered lesser included offense instruction.

*Sufficiency of the Evidence*

Pamela Holliman argues that the district court erred in denying her motion for judg-ment of acquittal on count II. Holliman argues that the evidence was insufficient to prove that she was guilty of interstate transportation of a stolen motor vehicle. Holliman argues that at most the evidence showed that she was a mere passenger in a car that she knew was stolen.

To prove interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312, the government must establish (1) the motor vehicle in question was stolen, (2) the defendant or defendants transported it in interstate commerce, and (3) the defendant or defendants knew that the motor vehicle was stolen. *E.g., Fitzpatrick v. United States,* 410 F.2d 513, 514–15 (5th Cir.1969). Usually the government shows unexplained possession of a motor vehicle recently stolen from another state and draws from that two inferences: (1) the party in possession transported the stolen motor vehicle in interstate commerce and (2) the party in possession knew that the motor vehicle was stolen. *Id.* at 515; *see, e.g., United States v. Weis,* 675 F.2d 217, 218 (8th Cir.1982) (per curiam). However, the mere suspicion of possession will not support the inferences of transportation and guilty knowledge. *E.g., Fitzpatrick v. United States,* 410 F.2d at 515. Evidence of presence in or around a stolen car, that is, evidence that the defendant was merely a passenger in a stolen car, will not alone prove the possession from which the jury may infer transportation and guilty knowledge. *See, e.g., id.* at 516; *Lawrence v. United States,* 400 F.2d 624, 627 (9th Cir. 1968); *Baker v. United States,* 395 F.2d 368, 369–70 (8th Cir.1968); *Barnes v. United*

---

8. To be an aider and abetter it must appear that one so far participates in the commission of the crime charged as to be present, actually or constructively, for the purpose of assisting therein. Thus, one who gives aid and comfort, or who commands, advises, instigates or encourages another to commit a crime may be said to be an aider and abetter. Generally speaking, to find one guilty as a principal on the ground that he [or she] was an aider and abetter, it must be proven that he [or she] shared in the criminal intent of the principal and there must be a community of unlawful purpose at the time the act is committed. As the term "aiding and abetting" implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed. It implies some conduct of an affirmative nature and mere negative acquiescence is not sufficient. *Johnson v. United States,* 195 F.2d 673, 675 (9th Cir.1952); *see, e.g., United States v. Jarboe,* 513 F.2d 33, 35 (8th Cir.), *cert. denied,* 423 U.S. 849, 96 S.Ct. 90, 46 L.Ed.2d 71 (1975).

*States,* 341 F.2d 189, 191–92 (5th Cir.1965); *Barfield v. United States,* 229 F.2d 936, 941–44 (5th Cir.1956) (Brown, J., concurring specially in part).

In the present case there is no dispute that there was sufficient proof that the green Cougar was stolen and that Holliman knew that it was stolen. Holliman argues that the government failed to prove interstate transportation. She argues that the government cannot rely upon the inference of transportation because there was insufficient evidence of possession. Holliman argues that the evidence showed only that she rode in a stolen car as it was being transported by someone else.

Had the government charged Holliman only with the substantive offense of interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312, this contention would have been arguable. *See Fitzpatrick v. United States,* 410 F.2d at 516 (insufficient evidence of possession); *Lawrence v. United States,* 400 F.2d at 626 (mere passenger in stolen car); *Baker v. United States,* 395 F.2d at 369–70 (mere passenger in stolen car). However, the government's theory in the present case was that Holliman aided and abetted in the interstate transportation of a stolen motor vehicle. The district court instructed the jury that they could return a guilty verdict only if they found that Holliman was "more than merely a passenger in a stolen car" and "actively participated in the alleged transportation of a stolen vehicle by some conduct of an affirmative nature." Unlike the evidence in *Baker v. United States,* 395 F.2d at 371, there was evidence in the present case that Holliman knew that the bank robbery plan included the theft of a car and its use as the getaway car and that she actively participated in the bank robbery. *See United States v. Callahan,* 439 F.2d 852, 861–62 (2d Cir.) (evidence that defendant had committed himself to the doing of an act in furtherance of the enterprise to rob bank courier truck was sufficient to support conviction as aider and abettor in theft and interstate transportation of stolen motor vehicle, even though defendant did not steal the car, never rode in or drove the car or even knew that it would be driven across state lines), *cert. denied,* 404 U.S. 826, 92 S.Ct. 56, 30 L.Ed.2d 54 (1971); *cf. United States v. Madison,* 689 F.2d 1300, 1311–12 (7th Cir.1982) (evidence that defendant actively participated in kidnapping clearly showed that defendant assisted in the transportation of the car used in the kidnapping and in doing so crossed state lines, even though defendant as a passenger did not control or influence the operation of the car), *cert. denied,* —— U.S. ——, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983).

Accordingly, the judgments of the district court are affirmed.