943 F.2d 53
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ahmad-Ha AHMAS (90-5197), Saad Dawalibi (90-5198),
Defendants-Appellants.
 Nos. 90-5197, 90-5198.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1991.
 
 Before RYAN and ALAN E. NORRIS, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 After a trial by jury, Ahmad-Ha Ahmas and Saad Dawalibi were found guilty of conspiracy to distribute and conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). The jury also found Dawalibi guilty of distributing cocaine and of possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Defendants appeal their convictions arguing that the district court erred by: (1) improperly restricting cross-examination; (2) permitting the display of a 9 mm firearm to the jury, which caused unfair prejudice; (3) shifting the burden of proof during closing argument; (4) allowing the improper admission of hearsay evidence; and (5) imposing improper sentences.
 
 I.
 
 2
 In May 1989, Don Chase, an agent of the Drug Enforcement Administration ("DEA"), was introduced to Dawalibi by Michael Brevik, a DEA informant. Chase presented himself as a businessman interested in purchasing cocaine and showed Dawalibi $25,000 in cash to demonstrate his ability to buy. Dawalibi informed Chase that he regularly supplied cocaine to five individuals and that he could supply Chase with as much cocaine as he could buy. To demonstrate his ability to provide the cocaine, Dawalibi set up a meeting with Chase at a motel and had Susan Foerster bring approximately 450 grams of cocaine. After viewing the cocaine, DEA agents arrested Dawalibi and Foerster. Immediately after being arrested, Foerster began to cooperate with authorities. She implicated Ahmas in their cocaine distribution activities and consented to the taping of a conversation between Ahmas and herself in which Ahmas incriminated himself. After being arrested and released that night, Ahmas was named in the superceding indictment filed in September 1989.
 
 
 3
 At trial, Foerster testified that Dawalibi was the leader of their drug ring and that, at his direction, she delivered cocaine to Ahmas two to three times per week for the period extending from the end of March 1989, to her arrest in May 1989. She testified concerning a trip that she and defendants made to Chicago for the purpose of expanding their drug operation. According to her testimony, Dawalibi provided Ahmas with a 9 mm firearm to protect the cocaine during the trip. Subsequently, Ahmas and Foerster were arrested by Chicago police and the weapon was seized. A Chicago police officer testified at trial that Ahmas claimed that the weapon belonged to him. Foerster also testified regarding a drug transaction she and Ahmas made in Miami.
 
 II.
 
 4
 A. Improper Restriction of Cross-Examination
 
 
 5
 Ahmas argues that the district court's limitation of the scope of the cross-examination of Foerster violated his rights under the Sixth Amendment and under Fed.R.Evid. 611(b). The court, he contends, improperly sustained the government's objections to questions designed to reveal Foerster's and Brevik's partnership in drugs and prostitution and to impeach Foerster's credibility.
 
 
 6
 The questions to which Ahmas refers include how Foerster met Brevik, whether she and Brevik were partners, why she lived at a motel from January to March 1989, and whether she had previously used names other than Foerster. Ahmas also sought admission of Foerster's previous convictions and of a tape-recorded conversation between Foerster and some of her friends. The court sustained the government's objections, saying Foerster could not be impeached by evidence that she had been a prostitute and ruling that questions concerning her previous convictions were not permitted, since defense counsel was unable to provide the release dates for the convictions. The objection to admission of the tape-recorded conversation was also sustained.
 
 
 7
 This court has previously noted that proof that a witness engaged in prostitution has little relevance to the witness' credibility and amounts to improper impeachment. United States v. Smith, 831 F.2d 657, 661 (6th Cir.1987), cert. denied, 484 U.S. 1072 (1988). When given an opportunity to examine Foerster by way of proffer outside the jury's presence, Ahmas failed to establish how the testimony sought from Foerster in the areas listed above was probative of anything other than to reveal that she was a prostitute. Because the jury observed Foerster testifying, and heard testimony that she worked for an escort service and was steeped in the drug trade, it was in a position to assess her credibility. The district court did not err in sustaining the objections.
 
 
 8
 Ahmas cites United States v. Mansaw, 714 F.2d 785 (8th Cir.), cert. denied, 464 U.S. 986 (1983), to support his contention that the district court improperly sustained the government's objection to the question regarding Foerster's use of different names. In Mansaw, the Eighth Circuit held that a witness' use of false names is a proper subject of cross-examination. Mansaw, 714 F.2d at 789. In this case, when the court asked for the relevancy of the question, defense counsel replied that it was posed for the purpose of identifying the witness. On redirect, Foerster testified that the other names were the names of her ex-husbands. Since it does not appear that Foerster used false names or false identities, Mansaw is not relevant and the district court's ruling was not improper.
 
 
 9
 Under Fed.R.Evid. 609(b), evidence that a witness has been convicted of a crime is not admissible if a period of more than ten years has elapsed since the witness was released from confinement. Since Ahmas was unable to show that Foerster was released from incarceration within the ten-year period prior to her testimony, the court was justified in disallowing questions regarding previous convictions.
 
 
 10
 The district court also properly sustained the government's objection to the admission of tape-recorded conversations between Foerster and another codefendant, Linda Butler, and a friend of Foerster's known only as "Charlie." When the court questioned the relevancy of the tape, defense counsel admitted that nothing in the tape contradicted Foerster's prior testimony and he did not advance any other position that would support its admission.
 
 
 11
 B. Unfair Prejudice Caused by Display of a Firearm to the Jury
 
 
 12
 Ahmas argues that the district court, without pursuing any Fed.R.Evid. 403 balancing analysis, denied his motion in limine to exclude any reference to the firearm seized by police when he and Foerster were arrested in Chicago.
 
 
 13
 However, the record demonstrates that the court did balance relevance against prejudice and concluded that the probative value of the firearm evidence outweighed any prejudice that might result from its display. This court's review of Rule 403 balancing determinations is conducted under an abuse of discretion standard. United States v. Gahagan, 865 F.2d 1490, 1499 (6th Cir.), cert. denied, 492 U.S. 918 (1989). In this case, the weapon was relevant to Ahmas' involvement in the narcotics trade under the tools of the trade doctrine. United States v. Arnott, 704 F.2d 322, 325-26 (6th Cir.), cert. denied, 464 U.S. 948 (1983); United States v. Marino, 658 F.2d 1120, 1222-23 (6th Cir.1981). To lessen the likelihood of any prejudicial impact caused by the weapon, the court gave the jury limiting instructions regarding its consideration of this evidence, consistent with Marino, 658 F.2d at 1124. In view of the limiting instruction and the relevancy of the evidence, we are unable to say that the district court abused its discretion by denying Ahmas' motion to suppress.
 
 
 14
 C. Shifting of the Burden of Proof During Closing Arguments
 
 
 15
 The government objected when Dawalibi's counsel asked, in closing argument, "Why didn't [the government] call Michael Brevik?" In response to the government's objection, the trial judge responded, "He's available at the defense request. It's argument for the jury to consider. But the jury must understand that [at] the express request of the defense, Mr. Brevik was instructed to return and he's here. He's available." Dawalibi argues that the judge's comment inferred that he had the burden of producing the witness, thus improperly shifting the burden of proof to the defense.
 
 
 16
 The thrust of the closing argument was that the government was attempting to hide something by not calling Brevik. Clarifying statements, such as those made by the district court, do not shift the burden of proof. See Fluellen v. Campbell, 683 F.Supp. 186, 189 (M.D.Tenn.1987), aff'd, 842 F.2d 331 (6th Cir.1988). In Fluellen, during closing arguments, defense counsel made reference to a blood type and analysis test that the state failed to perform. In response, the prosecutor remarked that if defense counsel thought it was such a good idea, why didn't he request that it be done. Id. The district court ruled that the prosecutor's remark did not impermissibly shift the burden of proof and was only tangentially related to the burden of proof. Id. In the case before us, the district judge's comment concerning Brevik's availability served to prevent the jury from inferring that the government controlled the witness' availability and any lack of evidence favorable to the defense was caused by the government's failure to call Brevik to the stand. The judge's clarifying statement, which was only tangentially related to the burden of proof, neither shifted that burden nor exceeded the bounds of fair comment.
 
 D. Improper Admission of Hearsay
 
 17
 1. Dawalibi argues that the district court erred in admitting into evidence from the business records of American Airlines an airline ticket, in his name, showing a round trip from Nashville to Chicago. Dawalibi argues that the evidence is inadmissible hearsay offered to prove that he made the trips indicated on the ticket. The court permitted the introduction of the ticket subject to a limiting instruction that it was not evidence of the truth of the matter, that is, proof that he actually traveled; it was merely circumstantial evidence that the jury could consider with regard to questions of means, opportunity, plans, preparation and absence of mistake, innocence or explanation.
 
 
 18
 We have recognized that there is a proper evidentiary purpose for this kind of documentary evidence. See Marino, 658 F.2d at 1124. In Marino, this court held that admission of airline tickets found in a defendant's possession is proper when done to show the circumstantial relationship of the parties to the scenario within which the crime was committed. Here, the ticket was introduced to show that Dawalibi had the means and the plan to travel to Chicago, and it also corroborates Foerster's testimony that she booked the flight for him.
 
 
 19
 2. Ahmas also argues that the district court erred by admitting into evidence a purchaser's carbon of an airline ticket, in his name, for a trip from Miami to Nashville, which was seized from Dawalibi's car.
 
 
 20
 The record demonstrates that, in response to the government's attempt to admit the ticket into evidence, the court ruled that it would be marked as an exhibit only, and not published to the jury or linked to Ahmas. Later, during Foerster's testimony, the government showed her the ticket exhibit and asked if she recognized it. She responded, "It's where [Ahmas] came back from Miami." Defense counsel then objected and moved for a mistrial. The court overruled the motion, stating that the ticket was not in evidence and instructed the jury to disregard her testimony. Since the ticket was not admitted into evidence and any damage that may have been caused by Foerster's testimony was cured by the court's instruction to the jury, Ahmas has failed to demonstrate error.
 
 E. Improper Sentencing
 
 21
 1. Defendants assert that, in arriving at the amount of cocaine with which they were involved for purposes of sentencing, the trial judge erroneously construed a line of questions and answers to arrive at the conclusion that Foerster had delivered between two to three kilograms of cocaine per week to Ahmas for an eight-week period.
 
 
 22
 Determinations concerning the estimated amount of drugs involved in a conspiracy to possess and distribute drugs are reviewed under the clear error standard. See United States v. Rodriguez, 896 F.2d 1031, 1034 (6th Cir.1990). In making its computation in this case, the district court relied upon its recollection of testimony that Foerster had delivered three kilograms of cocaine a week to Ahmas. No objection was lodged to the court's recollected summary of the evidence. The record shows that, on direct examination of Foerster by the government, she testified that she delivered cocaine to Ahmas two to three times a week. She said that the amounts she delivered varied: "I'd make a phone call, and I was told to take half a ki, a quarter ki, whatever...." The United States Attorney later asked her, "Well, over what period of time were you driving two or three kilos to Mr. Ahmas a week?" Foerster answered from March to May. The district court apparently based its calculations upon this testimony, which proceeded without any objection from defendant.
 
 
 23
 Since defense counsel failed to object to the line of questioning or to the summary of the evidence the district court was relying upon, we cannot say that the court was not permitted to rely upon that evidence in estimating the amount of drugs involved in the conspiracy. Fed.R.Evid. 103(a)(1). Since Foerster's testimony gave the court a sufficient foundation upon which to estimate the amount of cocaine in the conspiracy, the court's determination was not clear error.
 
 
 24
 2. Dawalibi argues that there was insufficient proof that he was an organizer or leader in the conspiracy, saying there is no evidence that he had authority over five or more people.
 
 
 25
 Section 3B1.1(a) of the Sentencing Guidelines provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." There was evidence that Dawalibi was the leader of a drug ring which had more than five individuals who were under his authority, and who engaged in extensive drug trafficking activities. The named individuals included Foerster, Ahmas, Dawalibi, and "Sam." In addition, Dawalibi had at least one supplier in Florida and five unnamed individuals to whom he supplied cocaine. Evidence also indicated that the organization was so extensive that Dawalibi could supply up to 500 kilograms of cocaine and could ship it overseas. Under these facts, Dawalibi was properly assessed an increase in his offense level for being a leader.
 
 
 26
 3. Defendants' sentences were enhanced two levels for the use of firearms in the commission of an offense. Dawalibi argues that the district court erred in increasing his offense level on the basis of the pistol found in his apartment, because it was not connected with the offense. Ahmas argues that his sentence should not be enhanced for the firearm on the Chicago trip because it was not his and it was in the possession of Foerster when it was seized.
 
 
 27
 Section 2D1.1(b)(1) of the Sentencing Guidelines provides: "If a dangerous weapon (including a firearm) was possessed during commission of the offense, increase by two levels." This enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. U.S.S.G. § 2D1.1(b), comment. (n. 3). Foerster's testimony established that Dawalibi possessed the pistol, a rifle, and a 9 mm firearm to protect the cocaine, and that Dawalibi gave Ahmas the 9 mm firearm on the trip to Chicago in order to protect the cocaine. A Chicago police officer testified that Ahmas claimed that the 9 mm firearm was his. The court did not err in enhancing defendants' sentences for the firearms.
 
 
 28
 4. Finally, Ahmas contends that he should have been given a two-point reduction for his minor role in the conspiracy.
 
 
 29
 U.S.S.G. § 3B1.2(b) calls for a two-level reduction in the offense level if the defendant is a minor participant. "[A] minor participant means any participant who is less culpable than most other participants...." U.S.S.G. § 3B1.2, comment. (n. 3). The evidence indicated that Ahmas was involved in the distribution of as much as twenty-four kilograms of cocaine and used a firearm to protect cocaine. Because his role cannot be described as less culpable than most of the other parties when he was involved in the distribution of as much as half of the cocaine estimated to be involved in the conspiracy, the district court did not err in denying Ahmas a two-point credit.
 
 
 30
 For the stated reasons, the district court's judgments of conviction and sentencing are affirmed.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation