**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sanjuana Ruiz COX,
Defendant-Appellant.**

No. 75–3130.

United States Court of Appeals,
Fifth Circuit.

July 29, 1976.

L. Aron Pena, Edinburg, Tex. (Court appointed), for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., Mary L. Sinderson, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEWIN, COLEMAN and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge:

Appellant Sanjuana Ruiz Cox was prosecuted under a two-count indictment charging her with importation of marijuana[1] and possession of marijuana with intent to distribute.[2] After a jury trial and adverse verdict she was adjudged guilty on both counts and sentenced to two concurrent five-year terms of imprisonment and three years' parole. We reverse and remand for a new trial.

On February 12, 1975 appellant entered the United States from Mexico in a 1966 Chevrolet. When she was routinely stopped and questioned at the Hidalgo, Texas port of entry, she declared a bottle of liquor, a bag of peanuts and a "hair-do". She also stated that she was an American citizen from Pharr, Texas and that she worked in a beauty shop there. Finding it odd that a Texas beautician would travel to Mexico to have her hair fixed, the customs inspector directed appellant to the secondary inspection area. At the secondary area appellant again declared the liquor and peanuts, but when a customs inspector routinely raised the Chevrolet's hood, he discovered 106 pounds of marijuana packed around the car's engine.

Appellant was arrested and advised of her *Miranda* rights. She told the inspectors

---

1. In violation of 21 U.S.C. § 952(a).

2. In violation of 21 U.S.C. § 841(a)(1).

that she had gone to Mexico to have her hair coiffured and had parked the automobile in a free customer parking lot, leaving the keys with an "attendant," she said she did not own the car but had borrowed it some weeks earlier from a friend who was presently in Michigan.

At trial appellant repeated these facts on direct examination. Her defense was that she had no knowledge of the marijuana, that it must have been planted in the Chevrolet by some unknown person while she was having her hair done. Appellant also testified on direct examination that she was a divorcee whose full name was Sanjuana Ruiz Cox. She did not, however, testify concerning her citizenship or place of birth. No evidence or testimony, by appellant or any other person, was offered to support her reputation for veracity or credibility.

On cross-examination the government attempted to discredit appellant's version of what occurred while she was in Mexico. In response to prosecution questioning, appellant testified that she was born in Mercedes, Texas, was and had always been a United States citizen, had never been deported to Mexico, had never used any other name, and had never used the name "Gudelia Lopez Alvarez." For the purpose of impeaching appellant, the prosecution ap-

proached the bench and proposed to introduce a "rap sheet."[3] The court sustained defense counsel's objection to it, and appellant was dismissed as a witness after reiterating her testimony concerning her place of birth and citizenship. The prosecution then called as its first rebuttal witness Dan Farrow, a criminal investigator with the Immigration and Naturalization Service (INS).

Farrow possessed an official INS file on one "Sanjuana Ruiz Alvarez." Certain evidence in the file, such as a photograph, indicated that appellant and Alvarez were the same person.[4] Several documents from this file were introduced into evidence through Farrow's testimony.

Government Exhibit 7 was the first of these documents. It is a sworn statement by Sanjuana Ruiz-Alvarez, made in 1961, in which the declarant states that (1) she had utilized the name Gudelia Lopez-Alvarez; (2) she was born in Mexico; (3) she last entered the United States by means of a false birth certificate, which stated that she was born in Mercedes, Texas; and (4) she worked as a prostitute in the United States and Mexico. Details concerning dates, places, frequency and prices of appellant's activities as a prostitute are stated in the affidavit, as is her admission of her arrest, fine and incarceration in McAllen and Edinburg, Texas for this activity.[5] Exhibit 7,

3. At oral argument there was some dispute as to whether the "rap sheet," later identified and introduced as Government Exhibit 12, was in fact a rap sheet. At the trial, however, it was consistently referred to in the testimony as a "rap sheet" and was introduced into evidence as such.

4. Government Exhibits 8–11 are documents taken from the file, and were introduced in a manner similar to Exhibit 7. Other facts evidenced by Exhibits 8–11 are cumulative of those proven by Exhibits 7 and 12, which are discussed in detail in the textual discussion *infra.* Our analysis concerning Exhibits 7 and 12 also applies to Exhibits 8–11.

5. Exhibit 7 is in the form of questions and answers. We quote from it, beginning at its second page:

Q. Where have you been working since you last entered the United States?
A. At the Castro Inn, a cantina in McAllen.

Q. What kind of work do you do at the "Castro Inn"?
A. I worked as a bar maid, serving beer.
Q. Do you know what the word prostitute means?
A. Yes.
Q. Tell me in your own words what a prostitute is.
A. It is a woman who has sexual relations with men for money.
Q. Have you ever worked as a prostitute?
A. Yes.
Q. When and where did you first begin to work as a prostitute?
A. I first began to work as a prostitute about 3 years ago, in 1958 in Reynosa, Tamps. Mexico.
Q. What are the names of some of the places in Mexico where you have worked as a prostitute?
A. In Monterrey, Mexico I worked at the Hotel Monterrey and in Reynosa I worked at the Hotel Rio.

especially that portion of it relating to appellant's past activities as a prostitute, was admitted into evidence and read to the jury over defense counsel's repeated objections on the grounds of improper predicate, extraneous and remote offenses and prejudicial effect.

Subsequently, over defense counsel's objection,[6] the F.B.I. "rap sheet," (Government Exhibit 12) which the court previously had ruled inadmissible, was introduced into evidence.[7] Exhibit 12 lists: (1) a 1958 violation of the immigration laws by Sanjuana Ruiz-Alvarez, for which she was voluntarily deported; (2) a 1960 civil deportation proceeding against Gudelia Lopez Alvarez; and (3) a 1960 fine against Juanita Alvarez Ruiz for vagrancy in Edinburg, Texas.[8] Additionally, the rap sheet records appellant's 1975 arrest on the two marijuana charges for which she was being tried.

No limiting instructions were requested or given with respect to Exhibits 7 or 12.[9] From appellant's judgment of conviction and subsequent sentence, she prosecutes this appeal. In view of our conclusion to reverse and remand for a new trial, we believe it appropriate to discuss the evidence in some detail.

This case was tried in May of 1975, prior to the effective date of the New Federal Rules of Evidence. Accordingly, we must resolve the issue whether the district court abused its discretion in admitting Exhibits 7 and 12 pursuant to the evidentiary principles in force in this circuit at the time of trial.[10] We assume without deciding, for purposes of this appeal, that the admission of Exhibits 7 and 12 was properly predicated and that these documents adequately evidence: (1) a prior con-

---

Q. Have you ever registered in Mexico as a Prostitute?

A. No, but I went to Reynosa in November, 1960 to register but the man who has the right to register prostitutes was not there, I intended to go back again to register but I never did it.

Q. Have you ever worked in the United States as a prostitute?

A. Yes, since I have been working at the "Castro Inn" I have relationes [sic] about once a week with men after I get off from work.

Q. Where did you have these relations and how much did the men pay you?

A. At the Hotel Rio in McAllen, Texas, some of them paid me five dollars and some of them paid me six dollars.

Q. Have you ever been arrested by the Police in this country?

A. Yes, the Police in McAllen told me once not to go to the Hotel with men, I went anyway and they arrested me, and fined me $50.00 I do not know what they charged me with. I did not pay the fine so they put me in jail at Edinburg, Texas.

6. The objection was based on the denial of an opportunity for the defense to challenge any fingerprinting expert's conclusion that appellant and the other persons named on the rap sheet were the same party. Exhibit 12 was introduced through the testimony of DEA agent Clark. Clark's testimony was that a rap sheet was based on fingerprints, and that all offenses listed thereon must have been committed by the same person. Although Clark was not a fingerprint expert, he testified that Exhibit 12 was an official record that was mailed to the McAllen DEA office from the F.B.I. Washington office in response to the DEA request for the rap sheet of the party possessing appellant's fingerprints. Defense counsel reiterated his earlier objection, which was overruled, whereupon Clark read the rap sheet's content to the jury.

7. Upon reversing his earlier position and allowing the rap sheet to be introduced into evidence, the trial judge commented: "We'll take a calculated risk and see what the Fifth Circuit will do with that."

8. It is assumed that the vagrancy conviction was the result of appellant's activities as a prostitute and her arrest and fine detailed in Exhibit 7.

9. Although we rest our reversal on other grounds, we note in passing that the failure to give limiting instructions in this case arguably meets the requirements for application of the plain error rule. See United States v. Garcia, 530 F.2d 650, 653–56 (5th Cir. 1976) (plain error doctrine applies where the evidence is extremely damaging, the need for a limiting instruction obvious, and the failure to give it so prejudicial that it affects the defendant's substantial rights).

10. Under the facts and in the circumstances of this case, however, the result we reach undoubtedly would be the same under the new rules. See Federal Rules of Evidence, 28 U.S.C. Rules 401, 608(b), 609(a) & (b) and 611(a) (Supp.1975).

viction [11] of appellant for prostitution,[12] and (2) immigration law violations that resulted in civil sanctions.

As a general rule, extrinsic evidence of other crimes is inadmissible to prove a defendant's bad character or criminal propensities. *United States v. Crockett,* 514 F.2d 64, 71 (5th Cir. 1975); *United States v. Ostrowsky,* 501 F.2d 318, 321 (7th Cir. 1974); *Kraft v. United States,* 238 F.2d 794, 801–02 (8th Cir. 1956). *See generally* 2 J. Wigmore, *Evidence,* § 305 at 205–06 (3d ed. 1940). There are exceptions to the proscription against evidence of other crimes, however, and in this case the government asserts what might be termed a "hybrid" exception to the principle. It contends that appellant's credibility was unusually crucial in this case because she was the sole defense witness and her only defense was lack of knowledge. Hence, the argument goes, evidence of appellant's violations of the immigration laws, accomplished by the utilization of false statements and aliases, was admissible because it strongly evidenced her lack of trustworthiness and destroyed her credibility. The government admits that the evidence of prostitution did not impeach her credibility, but argues that it was prop-er evidence as an admission against interest in a sworn statement.

Since Exhibit 7 evidences another crime, however, it makes no difference whether it is termed an admission by a party or even a confession. Prior convictions introduced into evidence in a subsequent prosecution often are based on pleas of guilty, *e. g., United States v. Shadletsky,* 491 F.2d 677 (5th Cir.), *cert. denied,* 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55 (1974), but this factor does not alter the rules limiting the admissibility of such evidence, *cf. United States v. Wiggins,* 166 U.S.App. D.C. 121, 509 F.2d 454 (1975) (merely because evidence of other offenses is contained in a confession does not render it admissible). Accordingly, in the principal case the fact that the evidence of prostitution was contained in appellant's sworn admission or confession (Exhibit 7) does not for that reason alone render it admissible.

Most federal courts that have considered the question have indicated that evidence of prior offenses of prostitution or disorderly conduct is not admissible to impeach a witness's credibility.[13] Under the new Federal Rules of Evidence such evidence likewise is not admissible.[14] One circuit that follows the moral turpitude test

---

**11.** The government inexplicably contends that Exhibits 7 and 12 do not evidence convictions. This position is adverse to the government's case because in this circuit the prosecution could not impeach a witness's reputation or credibility by *specific acts of misconduct not resulting in conviction,* but only through proof of reputation in the community or evidence of prior convictions of felonies or misdemeanors involving moral turpitude. *United States v. Park,* 525 F.2d 1279, 1283–84 (5th Cir. 1976); *United States v. Garber,* 471 F.2d 212, 215–16 (5th Cir. 1972); *United States v. Davenport,* 449 F.2d 696 (5th Cir. 1971). In order properly to evidence appellant's admitted conviction for prostitution, the government should have obtained a certified copy of the judgment of conviction from the McAllen or Edinburg authorities. However, Exhibit 7 is a sworn admission of this offense by appellant. Thus, it possesses the required degree of reliability and we will treat it as sufficient to evidence her prior conviction for prostitution.

**12.** At oral argument government counsel indicated that there was a "problem" with respect to the proof offered concerning fingerprints. She also admitted that proof concerning Exhibit 7, the sworn statement, was not very satisfactory. Counsel for the government further conceded that it "would have been better" if the evidence concerning prostitution had been removed from the affidavit, and asserted that the trial judge admitted the entire statement on his own motion. In our opinion government counsel acted forthrightly in discussing the record before this court.

**13.** *United States v. Evans,* 398 F.2d 159, 164–66 (3d Cir. 1968); *Smith v. United States,* 283 F.2d 16, 22 (6th Cir. 1960), *cert. denied,* 365 U.S. 847, 81 S.Ct. 808, 5 L.Ed.2d 811 (1961); *Packineau v. United States,* 202 F.2d 681, 687–88 (8th Cir. 1953); *McKune v. United States,* 296 F. 480 (9th Cir. 1924); *Solomon v. United States,* 297 F. 82, 88–94 (1st Cir. 1924). *But see United States v. Boyette,* 299 F.2d 92, 96 (4th Cir.), *cert. denied,* 369 U.S. 844, 82 S.Ct. 875, 7 L.Ed.2d 848 (1962).

**14.** *See* 28 U.S.C. Rule 609(a) (Supp.1975).

has held such an offense inadmissible as not involving moral turpitude.[15] Nevertheless, under the extremely broad moral turpitude standard employed in this circuit prior to the new rules, appellant's conviction of vagrancy for prostitution was not inadmissible *per se* for impeachment purposes. *See United States v. Alvarado,* 519 F.2d 1133, 1135 (5th Cir. 1975). *See generally United States v. Gloria,* 494 F.2d 477, 481 (5th Cir.), *cert. denied,* 419 U.S. 995, 95 S.Ct. 306, 42 L.Ed.2d 267 (1974).

■ It is well-settled, however, that to be admissible for any purpose the other offenses must have occurred at a time not too remote from the time of commission of the principal offense. *United States v. Adderly,* 529 F.2d 1178, 1180 (5th Cir. 1976); *United States v. Arteaga-Limones,* 529 F.2d 1183, 1196–97 (5th Cir. 1976); *United States v. Kirk,* 528 F.2d 1057, 1060 (5th Cir. 1976). Here, the prostitution offense was committed some fifteen years prior to appellant's trial. Hence, evidence of it should have been excluded because of its remoteness.

■ Moreover, the critical consideration in determining whether other crimes evidence is admissible is whether the probative value and prosecutorial need for such evidence outweigh its potential for prejudicing the jury. *See United States v. San Martin,* 505 F.2d 918 (5th Cir. 1974); *United States v. Anderson,* 165 U.S.App.D.C. 390, 509 F.2d 312 (1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975); *United States v. Goldsmith,* 483 F.2d 441, 443 (5th Cir. 1973). Evidence of illicit sexual activities is totally immaterial to the credibility or character traits involved in most criminal cases, and to the substantive issues in this case. *See, e. g., Aaron v. United States,* 397 F.2d 584 (5th Cir. 1968); *cf. Moore v. United States,* 394 F.2d 818 (5th Cir. 1968), *cert. denied,* 393 U.S. 1030, 89 S.Ct. 641, 21 L.Ed.2d 573 (1969); *Hudson v. United States,* 387 F.2d 331 (5th Cir. 1967), *cert. denied,* 393 U.S. 876, 89 S.Ct. 172, 21 L.Ed.2d 147 (1968). Accordingly,

with respect to evidence of this nature we apply the principle that it should be admitted only if its probative value clearly outweighs the probability of prejudice. *Cf. United states v. Lewis,* 157 U.S.App.D.C. 43, 482 F.2d 632, 643 (1973).

■ In the principal case the probative value of and prosecutorial need for the evidence of appellant's conviction for activities as a prostitute was substantially outweighed by the potential for prejudice of this evidence. As the government admitted at oral argument, a prostitution offense does not substantially impugn credibility since it does not necessarily entail dishonesty or false statement. Appellant did not present any witnesses, testimony or other evidence to support her credibility. Additionally, the government admitted at oral argument that appellant's story "was incredible enough by itself" without the evidence of other offenses. Accordingly, the need for the prostitution evidence to impeach appellant was not substantial. Finally, and most emphatically, even if the prosecution did have the right to introduce the *fact* of appellant's prior conviction for prostitution, the explicit and execrable details of this activity were completely immaterial, irrelevant, highly prejudicial and inadmissible. *See United States v. Dow,* 457 F.2d 246 (7th Cir. 1972); *United States v. Bray,* 445 F.2d 178, 182 (5th Cir.), *cert. denied,* 404 U.S. 1002, 92 S.Ct. 571, 30 L.Ed.2d 555 (1971); *United States v. Mitchell,* 427 F.2d 644, 647 (3d Cir. 1970); *United States v. Samuel,* 431 F.2d 610, 613 (4th Cir.), *aff'd after remand,* 433 F.2d 663 (4th Cir. 1970); *cert. denied,* 401 U.S. 946, 91 S.Ct. 964, 28 L.Ed.2d 229 (1971). The district court abused its discretion in allowing the introduction of the evidence of prostitution.

■ Although we need not dwell on the evidence relating to violations of the immigration laws, its introduction also was prejudicially erroneous and an abuse of discre-

---

15. *United States v. Bell,* 351 F.2d 868, 873 (6th Cir. 1965), *cert. denied,* 383 U.S. 947, 86 S.Ct. 1200, 16 L.Ed.2d 210 (1966).

tion. First of all, these offenses resulted in civil sanctions, not criminal convictions. *See generally Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 532, 96 L.Ed. 547, 558–59 (1952); *Lavoie v. INS,* 418 F.2d 732 (9th Cir.), *cert. denied,* 400 U.S. 854, 91 S.Ct. 72, 27 L.Ed.2d 92 (1969). As such they constituted mere evidence of previous specific acts of misconduct that should not have been admitted as impeachment evidence.[16] Secondly, these events in the years 1958 and 1960 were so remote that they should not have been admitted. Finally, although we recognize that this evidence was more reflective of appellant's lack of credibility because she admitted employing false statements and aliases,[17] the prosecutorial need for and the probative value of this evidence was clearly outweighed by its potential inflammatory effect.

■ We wish to note in closing that the admission of Government Exhibit 12, the F.B.I. "rap sheet," is particularly troublesome. Not only did it list the conviction for prostitution and violations of the immigration laws, but it also discloses appellant's arrest for the very charges for which she was being tried. It is hornbook law that indictments cannot be considered as evidence; this rap sheet account of her arrest for the very offenses for which she was on trial does not even rise to the level of an indictment. Nevertheless, this entire document became part of the evidence and was submitted to the jury for its consideration. In our opinion it was highly prejudicial and reversible error was committed by its introduction.

For all of the above stated reasons we reverse and remand for a new trial.

REVERSED and REMANDED.

---

16. *See* note 11 *supra.*

17. *See United States v. Gloria,* 494 F.2d 477, 481 (5th Cir.), *cert. denied,* 419 U.S. 995, 95 S.Ct. 306, 42 L.Ed.2d 267 (1974) ("Generally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude.").