STATE OF NEBRASKA, APPELLEE, V. JULIEANNE TAINTER,
APPELLANT.
359 N.W.2d 795

Filed December 21, 1984.   No. 84-380.

Gregory P. Drew, for appellant.

Paul L. Douglas, Attorney General, and Henry M. Grether III, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

After trial to a jury the defendant was convicted of driving while under the influence of intoxicating liquor and was

sentenced to 6 months' probation, fined $200 and costs, and her driving privileges were suspended for 60 days. Upon appeal to the district court the judgment was affirmed. The defendant has now appealed to this court.

The record shows that on April 12, 1984, the defendant was stopped by the Nebraska State Patrol after Leslie W. Peterson, chief of police in Arlington, Nebraska, had followed her as she repeatedly crossed the centerline while driving on U.S. Highway 30 near Fremont. After failing a preliminary breath test the defendant was taken to the Blair Police Department, where her breath was again tested by Officer Fred Carritt. Her blood alcohol level registered .158 percent.

At the trial Officer Carritt testified in detail as to how the breath test was administered and as to the results of the breath test. He first testified that he held a Class B permit to operate the Intoxilyzer 4011AS. He then explained the mandatory step-by-step procedure used in administering the test and the safeguards employed to protect the machinery.

On cross-examination Officer Carritt testified that he had no personal knowledge of any time when the Intoxilyzer or evidence obtained therefrom or other evidence was removed from the evidence room for other than law enforcement purposes. This statement, however, was impeached when the defendant introduced a letter dated March 15, 1982, from the Blair police chief, which informed Officer Carritt that he was suspended for 12 days for violating department rules in removing and improperly disposing of evidence held in the evidence room on or about August 19, 1981.

After the jury had found the defendant guilty, the defendant filed a motion for new trial alleging misconduct and irregularity in the testimony of Officer Carritt. This motion was overruled. The defendant's only assignment of error relates to the ruling on this motion.

Neb. Rev. Stat. § 29-2101 (Reissue 1979) provides in pertinent part: "A new trial, after a verdict of conviction, may be granted, on the application of the defendant, for any of the following reasons affecting materially his substantial rights: . . . (2) misconduct of the jury or the prosecuting attorney, or of the witnesses for the state."

A motion for a new trial is addressed to the sound discretion of the trial court, and unless an abuse of discretion is shown, its determination will not be disturbed. *State v. Haynes*, 186 Neb. 238, 182 N.W.2d 199 (1970). The asserted ground for a new trial must affect adversely the substantial rights of the defendant, and it must be shown that he was prejudiced thereby. *Fugate v. State*, 169 Neb. 420, 99 N.W.2d 868 (1959).

The defendant asserts that her substantial rights were prejudiced by the conduct of the State's witness. She contends that Officer Carritt's lying about his past misconduct with respect to evidence removed from the evidence room created a foundational inadequacy in the State's case as to proof of intoxication. Such a claim is without merit.

In *State v. Gerber*, 206 Neb. 75, 291 N.W.2d 403 (1980), we held that as foundation for an offer into evidence of the results of a breath test to prove intoxication, the State must establish (1) that the testing device was in proper working order at the time the test was given; (2) that the person giving the test was qualified and held a valid permit from the state Department of Health; (3) that the test was properly conducted in accordance with a method prescribed by the Department of Health; and (4) that there was compliance with any statutory requirements.

Here, each of the foregoing requirements was established by Officer Carritt's testimony. The record shows that he tested the machine before using it, was qualified to conduct the test, followed the 14-step checklist required in conducting a breath test using the Intoxilyzer 4011AS, and in doing so complied with the statutory requirements set out in Neb. Rev. Stat. §§ 39-669.07 through 39-669.18 (Reissue 1984).

No direct evidence was introduced to rebut the results of the breath test. The defendant introduced collateral evidence to attack Officer Carritt's credibility. The applicable rules were stated in *State v. Zobel*, 192 Neb. 480, 484, 222 N.W.2d 570, 572-73 (1974):

> The reception of evidence collateral to any issue in the case intended to affect the credibility of a witness is usually within the discretion of the trial court and the ruling concerning it is not grounds for reversal in the absence of an abuse of discretion. Hampton v. Struve, 160 Neb. 305,

70 N.W.2d 74. If a witness is cross-examined on a matter collateral to the issues, his answer cannot be subsequently contradicted by the party conducting the examination. Griffith v. State, 157 Neb. 448, 59 N.W.2d 701. The witness' alleged activities in the cult of Satan were clearly collateral. The material fact, of course, was the truth of his testimony as to the facts of the crime. If a fact could be proved as a part of the offerer's case, it is material and not a collateral fact. Griffith v. State, *supra*. The court did not abuse its discretion in limiting the pursuit of the collateral facts to the questions which were answered.

In *State v. Claire*, 193 Neb. 341, 344, 227 N.W.2d 15, 18 (1975), we said:

Defendant sought to show that Uphoff had supplied controlled substances to others. He was permitted to go into it when he called Uphoff as his own witness. Uphoff denied the charge. Defendant was permitted to question Uphoff about giving controlled substances to one John Scott. Uphoff denied doing so. Defendant then sought to prove by John Scott and his sister that Uphoff had given them controlled substances. Objections to this line of questioning were sustained. The evidence had no bearing on, and was not pertinent to, the issues. It was offered with a view to impeaching Uphoff on a collateral matter. Ordinarily if a witness is examined on a matter collateral to the issue, he cannot as to his answer be subsequently contradicted by the party conducting the examination. See, Griffith v. State, 157 Neb. 448, 59 N.W.2d 701; Latham v. State, 152 Neb. 113, 40 N.W.2d 522. "Evidence which does not tend to impeach any witness on a material point and which is not substantive proof of any` fact relative to the issue is properly excluded."

The rule was stated in *Jones v. Tranisi*, 212 Neb. 843, 846, 326 N.W.2d 190, 192 (1982), as follows:

"[A] witness may not be impeached by producing extrinsic evidence of 'collateral' facts to 'contradict' the first witness's assertions about those facts." McCormick on Evidence § 47 at 98 (2d ed. 1972). McCormick further says at 98: "What is to be regarded here as within this

protean word of art, 'collateral'? The inquiry is best answered by determining what facts are not within the term, and thus finding the escapes from the prohibition against contradicting upon collateral facts. The classical approach is that facts which would have been independently provable regardless of the contradiction are not 'collateral.' " The above is the rule in Nebraska. " 'It is only as to matters relevant to some issue involved in a case that a witness can be contradicted for the purpose of impeachment.' Carpenter v. Lingenfelter, 42 Neb. 728, 60 N.W. 1022, 32 L.R.A. 422.

. . . .
" 'The general rule is that a witness cannot be impeached as to collateral or immaterial matter brought out on cross-examination;* * *.' " *Ambrozi v. Fry*, 158 Neb. 18, 26, 62 N.W.2d 259, 265 (1954).
See, also, *Griffith v. State*, 157 Neb. 448, 59 N.W.2d 701 (1953); *Latham v. State*, 152 Neb. 113, 40 N.W.2d 522 (1949).

The fact that Officer Carritt on some other occasion may have removed evidence from the evidence room for other than law enforcement purposes was clearly a collateral matter. The defendant was bound by the answer of the witness and was not entitled to introduce evidence to prove that the answer was incorrect.

The fact, however, is that the exhibit offered by the defendant was received in evidence. Under these circumstances there could have been no prejudice to any substantial right of the defendant.

The defendant seems to have a theory that an incorrect or false statement by a witness for the State about his own past misconduct on the job somehow invalidated the results of the breath test.

The fact that a witness may have lied about a past act does not invalidate the rest of his testimony. It only means the jury must weigh these statements against the rest of the evidence in reaching a verdict. See *Wilson v. State*, 170 Neb. 494, 103 N.W.2d 258 (1960), *cert. denied* 364 U.S. 887, 81 S. Ct. 178, 5 L. Ed. 2d 108. This court will not reexamine or pass on the trier of fact's determination of credibility. *State v. Huffman*, 214

Neb. 429, 334 N.W.2d 3 (1983).

The evidence as to the breath test was not the only evidence of intoxication. There was the testimony of the Arlington police chief, who witnessed the defendant's driving as she repeatedly crossed the centerline, and that of the arresting officer, who found her slumped across the wheel of the car when the defendant was first stopped. She was initially unresponsive, her face and eyes were red, and there was an odor of alcohol in the car. It was his opinion, as a police officer, that the defendant was under the influence of alcohol.

When the defendant took the stand in her own defense, she admitted having four drinks that evening, but did not know how much alcohol was in each drink. She had no clear time reference for the events which took place that night. On the consent form for the breath test, she misspelled her name.

The misconduct of the State's witness here was insufficient to materially affect the defendant's substantive rights. As pointed out in the early case of *Argabright v. State*, 62 Neb. 402, 87 N.W. 146 (1901), which dealt with misconduct of an attorney at trial, to warrant reversal the misconduct must be of such a nature as to unduly influence the decision of the jury. Here, there was no undue influence. *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). The trial court did not abuse its discretion in denying the defendant's motion for a new trial.

The judgment of the district court is affirmed.

AFFIRMED.