STATE OF NEBRASKA, APPELLEE, V. TIMOTHY R. WILLIAMS,
APPELLANT.
365 N.W.2d 414

Filed March 29, 1985.   No. 84-352.

Thomas M. Kenney, Douglas County Public Defender, and Victor Gutman, for appellant.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Timothy R. Williams appeals his conviction in the district court for Douglas County for burglary, that is, breaking and entering the residence of Jasmine Davis with intent to steal property belonging to Davis. See Neb. Rev. Stat. § 28-507(1) (Reissue 1979).

Shortly before 2 a.m. on January 7, 1984, Jasmine Davis entered the front door of her residence and saw Timothy R. Williams running out the back door. Davis discovered that some of her personal property, principally clothing, was missing from her home. Davis got into her car and, while driving around the block, noticed Williams walking down the street. Davis returned to her home. Shortly thereafter, Williams appeared at Davis' house and pounded on the front door, but when Davis did not come to the door, Williams left. Around 3 a.m., Davis telephoned the Omaha Police Department and reported a burglary. During investigation by the police, Davis was uncertain about the burglar's identity but gave Williams' name as the burglar. Police took Williams into custody on January 10. After a preliminary hearing Williams was bound over to district court for a jury trial which commenced on February 10.

Before trial the prosecutor made a motion in limine as follows: "Also, I want to make a motion in limine. . . . [O]ne of my witnesses, Miss Davis, has a prior conviction for prostitution and lewd conduct, and it's irrelevant to the issues in this trial so I would make a motion in limine that that not be

brought up in the presence of the jury." Defense counsel objected, but the court sustained the motion in limine.

During the trial, Davis positively identified Williams as the burglar leaving her house through the back door. The gist of testimony from police officers was (1) Williams always denied involvement in the alleged burglary and (2) no fingerprints were obtained during investigation of the burglary.

After the State rested its case, and outside the jury's presence, defense counsel requested permission to recall Davis to ask whether as a state's witness at Williams' preliminary hearing she had testified falsely in denying she was a prostitute. Defense counsel intended to question Davis about her sworn denial of prostitution to impeach her credibility by showing "the fact that she had perjured herself" at the preliminary hearing. The prosecutor objected and claimed the proposed use of Davis' prior testimony was irrelevant to the present prosecution because "We're not trying a prostitution case; we're trying a burglary case." The court denied the request to recall Davis for the cross-examination proposed. Williams did not testify, and rested his case without further evidence. The jury found Williams "guilty of burglary."

As his only assignment of error, Williams contends that the trial court's refusal to permit impeachment of Davis' credibility by showing her falsehood at the preliminary hearing constituted reversible error as an abuse of discretion.

The fundamental question to be resolved is whether use of Davis' previous testimony at the preliminary hearing was a proper method of testing credibility in view of Rule 608(2) of the Nebraska Evidence Rules, which provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in section 27-609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness (a) concerning his character for truthfulness or untruthfulness, or (b) concerning the character for truthfulness or un-truthfulness of another witness as to which character the

witness being cross-examined has testified.
Neb. Rev. Stat. § 27-608(2) (Reissue 1979).

It is clear that defense counsel fully informed the trial court about the reason for recalling Davis. See Rule 103(1)(b), Nebraska Evidence Rules, Neb. Rev. Stat. § 27-103(1)(b) (Reissue 1979).

There are two aspects to the question raised by Williams: (1) Was the proposed cross-examination of Davis a permissible means to attack the witness' credibility? (2) Did the trial court abuse its discretion and thereby commit reversible error by prohibiting the proposed cross-examination?

The right of cross-examination is an essential and fundamental requirement of a fair trial, and a defendant is entitled to engage in searching and wide-ranging cross-examination, including anything tending to affect the accuracy, veracity, or credibility of a witness. *State v. Thaden*, 210 Neb. 622, 316 N.W.2d 317 (1982). However, a ruling on evidence of a collateral matter but intended to affect the credibility of a witness falls within the discretion of a trial court, and absent an abuse of discretion, a trial court's ruling on such evidence is not grounds for reversal. *State v. Vicars*, 207 Neb. 325, 299 N.W.2d 421 (1980). See, also, *State v. King*, 197 Neb. 729, 250 N.W.2d 655 (1977).

It is apparent that the trial court and the prosecutor viewed any reference to Davis' testimony at Williams' preliminary hearing as an attempt to impeach Davis' credibility by virtue of her being a prostitute, a misdemeanor prohibited by Neb. Rev. Stat. § 28-801 (Reissue 1979). Ordinarily, a prostitution offense does not substantially impugn credibility, since such conduct does not necessarily entail dishonesty or false statement and, therefore, is not probative of untruthfulness. See *State v. Bittner*, 188 Neb. 298, 196 N.W.2d 186 (1972). See, also, *United States v. Cox*, 536 F.2d 65 (5th Cir. 1976); *United States v. Mansaw*, 714 F.2d 785 (8th Cir. 1983).

Evidence which does not tend to impeach any witness on a material point and which is not substantive proof of any fact relative to the issue is properly excluded. See, *State v. Claire*, 193 Neb. 341, 227 N.W.2d 15 (1975); *State v. Wilson*, 174 Neb. 86, 115 N.W.2d 794 (1962). The test of whether a fact inquired

of in cross-examination in criminal proceedings is collateral is, Would the cross-examining party be entitled to prove it as a part of the case tending to establish his plea? See *State v. Zobel*, 192 Neb. 480, 222 N.W.2d 570 (1974).

Davis' prostitution was not a material point in any proceedings against Williams, including the preliminary hearing and the jury trial. Prostitution on the part of Davis was a collateral matter and not substantive proof of any fact relative to the breaking and entering charged against Williams. If evidence of Davis' prostitution was irrelevant in Williams' trial, as we have previously so held in *State v. Bittner, supra*, Davis' denial of prostitution was, likewise, irrelevant. The fact that Davis' false denial may have occurred under oath during a preliminary hearing does not alter our conclusion that reference in any form to Davis' alleged prostitution was properly excluded by the trial court as an attempted inquiry into a collateral matter. To allow Williams to impeach Davis by reference to her testimony at the preliminary hearing is to allow Williams to do indirectly what he could not do directly during his trial. This we cannot permit. There was no abuse of discretion by the trial court.

AFFIRMED.

SHANAHAN, J., dissenting.

The issue is prevarication, not prostitution.

"The character of a witness for truthfulness or mendacity is relevant circumstantial evidence on the question of the truth of particular testimony of the witness." McCormick on Evidence § 41 at 89 (E. Cleary 3d ed. 1984). Therefore, Rule 608(2), Neb. Rev. Stat. § 27-608(2) (Reissue 1979), permits cross-examination through use of a specific instance of a witness' conduct to demonstrate the truthful or untruthful character of the witness. Cf., *United States v. Nogueira*, 585 F.2d 23 (1st Cir. 1978); *United States v. Estell*, 539 F.2d 697 (10th Cir. 1976) (application of Fed. R. Evid. 608(b)). Under Rule 608(2) a cross-examiner can question a witness about a specific instance which adversely reflects on the witness' character for truthfulness. Previous misconduct may discredit a witness, when such misconduct has probative value that the witness is not one to be believed.

In determining whether to allow cross-examination to impeach credibility through use of a specific instance of a witness' misconduct, the following factors should be considered in measuring the scope of cross-examination: (1) The relevance of the misconduct to a witness' truthfulness; (2) The importance of the testimony to the cross-examiner's case; and (3) The danger of prejudice, confusion, or delay raised by the evidence intended to be adduced in cross-examination. *United States v. Leake*, 642 F.2d 715 (4th Cir. 1981); McCormick on Evidence § 42 (E. Cleary 3d ed. 1984). Some other factors affecting cross-examination are found in Rule 611, Neb. Rev. Stat. § 27-611 (Reissue 1979) (mode of interrogation during cross-examination), and Rule 403, Neb. Rev. Stat. § 27-403 (Reissue 1979) (overriding protection afforded by the balancing test regarding relevancy and unfair prejudice), of the Nebraska Evidence Rules.

Was testifying falsely under oath relevant to Davis' truthfulness? A witness' response to the question whether that witness has told the truth on a previous occasion could well be probative of the witness' character for truthfulness or untruthfulness. *United States v. Fortes*, 619 F.2d 108 (1st Cir. 1980). See, also, *United States v. Cole*, 617 F.2d 151 (5th Cir. 1980); 3A J. Wigmore, Evidence in Trials at Common Law § 982 (J. Chadbourn rev. 1970). Disdain for truth in sworn testimony and deliberate disregard of obligatory veracity consequent to an oath are probative of a witness' untruthfulness.

Was existence of Davis' previous falsehood important to Williams' case? Davis was the State's principal witness, the only eyewitness, and Williams' accuser. Existence of incriminating fact or inference was related to Davis' credibility, perhaps even in direct proportion. As a very practical matter, conviction or acquittal depended on the jury's assessment of Davis' credibility.

When placed on a balance, the final factor—the danger of prejudice, confusion, or delay—is outweighed by the importance of cross-examination in the present case. If Davis admitted she had testified falsely at Williams' preliminary hearing, impeachment of her credibility would have been

finished and the trial would have moved on, with the jury taking the admission of falsehood into account when evaluating Davis' credibility. No minitrial or further questioning on Davis' credibility was needed if the specific instance of Davis' previous falsehood was conceded. On the other hand, were Davis to deny her previous falsehood, there still would have been no great amount of time lost, because Williams was not entitled to present extrinsic evidence in the form of rebuttal evidence to contradict Davis' denial of falsehood. Rule 608(2). See, also, *State v. Tainter*, 218 Neb. 855, 359 N.W.2d 795 (1984). However, in Williams' case the trial court prevented Williams from even asking the question about Davis' previous falsehood. What would have been Davis' response is absolute speculation.

It is "extrinsic evidence" on credibility that is prohibited by Rule 608(2), not cross-examination to impeach credibility by an attack from the appropriate base, namely, evidence probative of untruthfulness. When we enter an era wherein an oath of a witness becomes just whimsical words in some perfunctory promise to tell the truth, perhaps then, and only then, will a witness' falsehood under oath be an insignificant index to test or doubt a witness' credibility. In prohibiting Williams' cross-examination into Davis' character for veracity, the trial court abused its discretion. Williams was prevented from exercising his right of cross-examination as a fundamental requirement in a fair trial. See *State v. Thaden*, 210 Neb. 622, 316 N.W.2d 317 (1982). A new trial should be granted.

WHITE, J., joins in this dissent.