STATE OF NEBRASKA, APPELLEE, V. WILLIAM MICHAEL ZARITZ,
ALSO KNOWN AS MICK ZARITZ, APPELLANT.
456 N.W.2d 479

Filed June 15, 1990.   No. 89-240.

Winfield J. Scott for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

William M. Zaritz appeals his three bench trial felony convictions and sentences for conspiracy to commit a theft, for theft of a $77,800 truck, and for failing to appear in court for his scheduled trial.

The defendant was sentenced to concurrent 6- to 20-year prison terms on the conspiracy and theft charges and fined $10,000 on each count. For failing to appear at his scheduled trial, Zaritz received a prison term of not less than 20 nor more than 60 months, that sentence to run consecutively to the other sentences. We affirm the judgment of the district court for York County.

Zaritz sets forth several assignments of error, which may be consolidated to allege that the trial court erred in (1) failing to grant a mistrial for prosecutorial misconduct, (2) allowing the prosecutor to ask the alibi witness during cross-examination if he had ever hauled drugs for the defendant, (3) finding that the evidence was sufficient to prove Zaritz guilty beyond a reasonable doubt, (4) convicting the defendant solely upon his own admissions without corroborating independent evidence, and (5) imposing excessive sentences.

A criminal conviction will be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Badami, ante* p. 118, 453 N.W.2d 746 (1990). Taking the view most favorable to the State, the evidence shows the following.

From September 1984 through July 1986, the Federal Bureau of Investigation (FBI) conducted an undercover investigation which targeted dealers and purchasers of stolen heavy equipment. A confidential informant was employed by the FBI to introduce an undercover FBI agent to individuals who stole trucks, cars, and construction equipment. After the undercover agent was introduced to dealers of stolen property, the agent and the informant were to purchase the property and to obtain introductions to other sellers of stolen merchandise. Agent Dennis Mattes was the assigned undercover agent.

During the investigation, the informant came in contact with Noel Gene Amerman. Amerman acted as a broker arranging meetings between sellers and buyers of stolen property.

Amerman apprised the informant that Roger Southard was the leader of a group of truck thieves operating around Saint James, Missouri.

On August 28, 1985, Amerman introduced Mattes to Southard in Saint James as an individual who was looking for and willing to pay money for stolen equipment and trucks. Southard informed Mattes that he had some of the best thieves in the business working for him and that they would go into a dealership carrying their own fuel, start a truck, and drive it away. At the conclusion of this meeting, Mattes told Southard that he wanted either a new or low-mileage Kenworth or Peterbilt truck and that he was willing to pay $10,000. In conversations after the initial meeting, Southard, Mattes, and the informant discussed the theft of trucks and construction equipment and the price to be paid for the stolen property. On October 22, 1985, Southard and Mattes agreed that if Southard could provide a new Peterbilt or Kenworth truck, Mattes would buy it.

At approximately 9 p.m. on October 23, Southard called Mattes and told him that he had found a Kenworth truck. The parties agreed on a price of $12,000 for the truck and to meet at a truckstop in either Sioux City or Council Bluffs.

It is uncontradicted that sometime after 5:30 p.m. on October 23, 1985, a new Kenworth truck with a retail value of $77,800 was taken from a truck dealership lot near York. At about 3 a.m. on October 24, Southard called Mattes from a rest stop and informed him that he had a new truck and was 70 miles from a truckstop in Council Bluffs where the parties were to meet between 5 and 5:30 a.m.

During the early morning hours of October 24, a scale officer for the Nebraska State Patrol on duty near Wahoo, Nebraska, pursued a truck which did not stop at the scales. The officer observed a maroon and white vehicle following the truck just before it arrived at the scales. It was later determined that the maroon and white car belonged to Southard's mother and was driven by Southard. When the officer reached the truck, it was parked by the side of the highway. The truck's engine was running, and no one was found in the vicinity. It was later determined that the truck was the Kenworth taken from the

dealership near York. While the officer was parked, Southard, who had been following the officer, drove past him.

A dent puller, which Southard testified is a device that can be used to remove a lock from a door of a truck, and a "line sheet," which described the truck and identified the customer as "Sahling KW-Kearney," were recovered from the truck. Sahling was a truck dealership with offices in Kearney and York. Two sets of footprints in mud, one made by cowboy boots and the other by tennis shoes, led from the passenger side of the truck into a nearby field. With the aid of police dogs, the footprints were followed, but no suspects were located. No identifiable fingerprints could be found anywhere on the truck. A Wahoo police officer observed Southard's automobile parked in the parking lot of a convenience store in Wahoo at about 4:55 on the morning of October 24. The officer testified that the sole occupant of the vehicle appeared to be asleep. Shortly after 6 a.m., an officer with the Saunders County sheriff's office saw Southard's car parked near a phone booth in Mead. Southard was alone in the car and informed the officer that he was in the area looking at some tractor-trailers.

Mattes, along with the confidential informant, arrived at the truckstop in Council Bluffs between 5:30 and 6 a.m. At 8:05 a.m., an FBI agent conducting surveillance at the truckstop observed Southard's vehicle pull into a parking space next to Mattes' car. The agent watched Southard and the defendant exit the car and enter the restaurant together.

Mattes and the informant met with Southard and Zaritz in the truckstop's restaurant. Zaritz was dressed in damp cowboy boots. The legs of his grass-stained bib overalls were wet from the hems upward for about 1 foot. The defendant explained that his pants were wet because he had run through a cornfield. Southard identified Zaritz as his driver. When Southard reached the booth, he stated, "We lost the truck." Southard told Mattes that he had dropped two drivers off at a dealership, where they stole a truck; that the truck then was driven on Highway 92 toward Omaha; and that when the truck passed a weigh scale, it was pursued by the officer. Southard said he was following the truck in his mother's car. He passed the truck and the officer. Southard said that the drivers escaped into a

cornfield, that he parked his car in a small town and was sleeping when he was awakened and questioned by a local police officer, that he eventually picked up Zaritz when he came out of a cornfield, and that the other driver remained in the cornfield. Southard said he and Zaritz then drove to the prearranged meeting in Council Bluffs. Zaritz also conversed with Mattes and the informant, and his version of the events matched that of Southard.

When Southard assured Mattes and the informant that another truck would be stolen, Zaritz commented that no one could do it as well as he could. Zaritz made a call from the telephone located at the booth to determine if the other driver had been located. After the defendant ended his phone conversation, he and Southard discussed how to find the other driver. The defendant also assured Mattes that if the other driver was captured, he would not implicate Mattes. When the meeting was concluded, Zaritz and Southard left the parking lot in the vehicle driven by Southard.

Upon arriving at the dealership's office near York on the morning of October 24, the general manager discovered that one of the dealer's trucks was missing and that a chain used to lock the fence gate had been cut. No one had been authorized to remove the truck from the premises during the time in question. A truck with the same serial number as the missing truck was returned from Wahoo to the York dealership on approximately October 28. The ignition lock cylinder and left door lock had been pulled, and a vent window was broken.

On March 28, 1988, the defendant was charged with theft by unlawful taking, over $1,000, and, on May 9, 1988, with conspiracy to commit theft by unlawful taking, over $1,000. Zaritz appeared for his arraignments on April 5 and June 21, 1988. The two charges, contained in separate informations, were consolidated for trial. The trial for the two consolidated charges was scheduled for August 29. The defendant was released on bond pending trial.

Zaritz' attorney received notice that Zaritz' trial for the theft and conspiracy charges would begin on August 29, 1988. It is uncontradicted that on at least two occasions, Zaritz was made aware of his trial date by his attorney. Early in the morning of

August 29, Zaritz' wife informed his attorney by phone that she had suffered an insect bite and would not be able to accompany the defendant to his trial. Zaritz' attorney advised her that it was necessary for her husband to attend the trial. On that same morning, the defendant's wife also called the clerk of the court and informed her that she could not make it to the trial. The clerk advised her that her husband's presence was required. The defendant's wife testified that she and her husband were aware of the trial date.

The defendant failed to appear on August 29. No additional continuance was requested by the defendant. A bench warrant was issued by the trial court on September 7, 1988. The defendant was additionally charged with felony failure to appear, in violation of Neb. Rev. Stat. § 29-908 (Reissue 1989). Zaritz waived his right to a jury trial. After a bench trial which began December 14, 1988, Zaritz was found guilty on all three counts with which he was charged.

Section 29-908 provides in pertinent part, "Whoever is charged with a felony and is released from custody under bail . . . and willfully fails to appear before the court granting such release when legally required or to surrender himself within three days thereafter, shall be guilty of a Class IV felony . . . ." Zaritz raises no assignment of error regarding his conviction on the failure to appear count. The uncontradicted evidence demonstrates that Zaritz was released from custody under bail, that he was aware of his trial date and that his presence at trial was required, that he was not excused from attending the trial, and that he failed to appear.

## ALLEGED PROSECUTORIAL MISCONDUCT

Upon defense counsel's motion to sequester the witnesses, the trial court ordered that all witnesses remain outside the courtroom until called. After the first witness completed his testimony, the trial court indicated that witnesses were not to discuss their testimony after they finished testifying. Sam Settles, the defendant's alibi witness, stayed outside the courtroom before testifying. An FBI agent, pursuant to the prosecuting attorney's request, asked Settles for his name, other identifying information, and his date of birth. The information

was entered into a computer to determine if Settles had a criminal record. Settles did not have a record in Nebraska, and the FBI computer did not disclose any criminal history. Alleging that the prosecutor's conduct was inappropriate, Zaritz moved for a mistrial. The trial court overruled the motion, which ruling the defendant assigns as error.

The decision to grant a motion for mistrial is within the discretion of the trial court and will be upheld on appeal absent an abuse of discretion. *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989). Before it is necessary to grant a mistrial for prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice has actually occurred. *State v. Ross*, 220 Neb. 843, 374 N.W.2d 228 (1985).

The FBI agent's acts in no way violated the sequestration order. Assuming for purposes of argument that the prosecuting attorney's conduct was improper and that the sequestration order was violated, Zaritz was not harmed by this conduct. No adverse information regarding Settles or the defendant was obtained or used at trial due to the FBI agent's actions. Clearly, no substantial miscarriage of justice has been shown as a result of the alleged prosecutorial misconduct. Because the trial court did not abuse its discretion in refusing to grant a mistrial, this assignment of error is without merit.

### IMPROPER CROSS-EXAMINATION

During cross-examination, the prosecuting attorney asked Settles if he had ever hauled drugs from California to Missouri for the defendant. After defense counsel's objection was overruled, Settles denied ever transporting drugs for Zaritz. The defendant alleges that it was error for the district court to allow the State to question Settles regarding the transportation of drugs for the defendant.

The scope of cross-examination of a witness rests largely in the discretion of the trial court, and its ruling will be upheld on appeal unless there is an abuse of discretion. *State v. Hankins, supra*. In relevant part, Neb. Rev. Stat. § 27-608 (Reissue 1989) provides:

> (2) Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility . . .

may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness (a) concerning his character for truthfulness or untruthfulness . . . .

In *State v. Fonville*, 197 Neb. 220, 248 N.W.2d 27 (1976), the defendant and William Jungwirth conspired to make it appear that a service station which the defendant managed had been robbed. Jungwirth testified for the State after he pleaded guilty to a charge of grand larceny. On cross-examination of Jungwirth, the defendant's counsel asked him if he had ever beaten his niece. The State's objection was sustained, and on appeal, the defendant argued that the evidence was admissible to show Jungwirth's credibility. Relying on § 27-608, this court upheld the trial court, reasoning that whether Jungwirth had beaten his niece was not probative of his untruthfulness.

*State v. Bittner*, 188 Neb. 298, 196 N.W.2d 186 (1972), *cert. denied* 409 U.S. 875, 93 S. Ct. 123, 34 L. Ed. 2d 127, involved a prosecution for possession of a forged instrument. The State's principal witness was asked on cross-examination if she was a prostitute. This court indicated that, ordinarily, a prostitution offense does not substantially impugn credibility, since such conduct does not necessarily entail dishonesty or false statement and, therefore, is not probative of untruthfulness.

Applying the foregoing to this case, it is concluded that the question at issue was improper because transportation of drugs is not an offense entailing dishonesty or false statement and, therefore, is not probative of Settles' untruthfulness. See *State v. Williams*, 219 Neb. 587, 365 N.W.2d 414 (1985) (reciting that an offense which does not substantially impugn credibility may not be used for impeachment purposes under § 27-608). The prosecutor's question alleging unsubstantiated misconduct was an attempt to smear the witness by innuendo. However, in this bench trial case, any error in posing the question was harmless error beyond a reasonable doubt. See *State v. Rowland*, 234 Neb. 846, 452 N.W.2d 758 (1990). In a case tried to a court without a jury, there is a presumption that the trial court, in reaching its decision, considered only evidence that is competent and relevant. *State v. Methe*, 228 Neb. 468, 422

N.W.2d 803 (1988). This assignment of error is without merit.

## SUFFICIENCY OF THE EVIDENCE

Although the defendant did not testify, he presented an alibi defense through the testimony of Settles. Settles testified that Zaritz helped drive his truck from Missouri to Toronto. Though Settles could not recall the date involved, he implied that Zaritz was with him when the truck at issue was stolen. Settles further testified that when he and the defendant arrived at the truckstop in Council Bluffs en route from Toronto to California, Zaritz informed him that he had met a friend of his that had some kind of situation at a weigh scale and that he would be going home with him.

The following reflects Southard's testimony regarding the events in question. Sometime after Mattes and Southard met, Zaritz and Southard agreed that Southard would drive a car and two other persons would steal a truck and drive it. After Zaritz and another proposed accomplice had a disagreement, Southard and Zaritz discussed who would go in that person's place. Zaritz later informed Southard that his friend Skip would be accompanying them. At Zaritz' home, a dent puller and tools for the theft were obtained. On October 23, Southard, Zaritz, and Skip arrived in York and decided that it would be easy to steal a Kenworth truck from there. A plan was devised for stealing the truck. According to the plan, Zaritz and Skip were to clip the chain used to lock the fence gate with boltcutters, yank the locks out of the truck's door, and steal the truck. The trio further agreed that Skip would receive $2,000 and Zaritz and Southard would split the remainder.

Southard dropped Zaritz and Skip off near a Kenworth truck dealership near York on the evening of October 23. The defendant and Skip took the dent puller, boltcutters, and screwdriver with them. Southard parked across the highway from the truck dealership, acting as a lookout. Southard observed Zaritz and Skip enter a truck and back the truck out of the dealer's premises. Southard followed the truck eastward toward the Omaha-Council Bluffs area.

The defendant argues that in view of Settles' alibi testimony, Southard's testimony was insufficient to prove Zaritz' guilt

beyond a reasonable doubt. Zaritz contends that Southard's testimony should be disbelieved because he is a convicted felon and his testimony at trial conflicted with that given at the preliminary hearing.

"In reviewing a criminal conviction, it is not the province of the Supreme Court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it."

*State v. Johns*, 233 Neb. 477, 478, 445 N.W.2d 914, 916 (1989). As this court stated in *Johns, supra* at 480, 445 N.W.2d at 917, "The defendant is essentially asking this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, and weigh the evidence. Such is not the province of the Supreme Court but, rather, the province of the fact finder . . . ." Zaritz is asking us to do the same. It is obvious from the verdict that the trial court did not find Settles' testimony credible in light of the entire record. Though a defendant's conviction of a crime may be based on uncorroborated testimony of an accomplice, see *State v. Loveless,* 234 Neb. 463, 451 N.W.2d 692 (1990), Southard's testimony was corroborated in this case by circumstantial evidence and by the admissions of Zaritz to an FBI agent and the confidential informant.

It is undisputed that the truck was stolen and that it was recovered by the weigh scale officer near Wahoo. The scale officer observed a car matching the car driven by Southard following the truck. Two other law enforcement officers also saw a maroon and white vehicle in the vicinity where the truck was recovered. Zaritz arrived at the prearranged meeting place with Southard dressed in damp cowboy boots and wet, grass-stained overalls, corroborating Southard's account of this accomplice's flight through a cornfield. From the evidence before it, a court could find beyond a reasonable doubt that Zaritz "[took], or exercise[d] control over, movable property of another with the intent to deprive him or her thereof." See Neb. Rev. Stat. § 28-511 (Reissue 1985). Neb. Rev. Stat. § 28-202

(Reissue 1989) provides:

(1) A person shall be guilty of criminal conspiracy if, with intent to promote or facilitate the commission of a felony:

(a) He agrees with one or more persons that they or one or more of them . . . shall cause . . . the result specified by the definition of the offense; and

(b) He or another person with whom he conspired commits an overt act in pursuance of the conspiracy . . . .

Southard's testimony, together with the circumstantial evidence and Zaritz' admissions, provides a sufficient basis for a court to find beyond a reasonable doubt that Zaritz, with the intent to promote the commission of a felony, agreed with at least Southard to steal a truck and did so. This assignment of error is meritless.

## CORROBORATION OF ADMISSION

Relying on the proposition that a confession, standing alone, is insufficient to prove that a crime has been committed, see *State v. True*, 210 Neb. 701, 316 N.W.2d 623 (1982), Zaritz next alleges that the court erred in finding that Zaritz' admissions at the truckstop were corroborated by independent evidence. Where the crime involves physical damage to a person or property, the prosecution must generally show that the injury for which the accused confessed responsibility did in fact occur and that some person was criminally culpable. *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989) (murder); *True, supra* (aiding and abetting a burglary); *State v. Scott*, 200 Neb. 265, 263 N.W.2d 659 (1978) (murder in the perpetration of, or attempt to perpetrate, a robbery and shooting with intent to kill, wound, or maim). There need be no link, outside the confession, between the injury and the confessor. *Hankins, supra*.

Even assuming arguendo that Zaritz' admissions at the truckstop constituted a confession, this assignment of error is meritless. The record indisputably reflects that a truck was stolen from a dealership near York and that some person was criminally culpable. Zaritz' admissions at the truckstop linked him to the crimes. As the preceding discussion demonstrates,

even without the defendant's admissions, there was more than adequate extrinsic evidence from which a trial court could find the defendant guilty beyond a reasonable doubt of theft and conspiracy. This assignment of error is without merit.

## EXCESSIVE SENTENCE

Zaritz lastly contends that a term of imprisonment of 6 to 20 years on each of the counts of theft and conspiracy, plus a fine of $10,000 on each of those counts, and a term of imprisonment of 20 to 60 months on the failure to appear charge are excessive. It is well established that a sentence within statutorily prescribed limits will not be disturbed on appeal absent an abuse of discretion. *State v. Nelson, ante* p. 15, 453 N.W.2d 454 (1990).

Both conspiracy to commit the theft of property having a value of more than $1,000 and theft of property having a value of more than $1,000 are Class III felonies. See § 28-202, § 28-511, and Neb. Rev. Stat. § 28-518 (Reissue 1989). A Class III felony carries a penalty of not less than 1 nor more than 20 years' imprisonment, up to a $25,000 fine, or both. See Neb. Rev. Stat. § 28-105 (Reissue 1985). Failing to appear for a trial on felony charges is a Class IV felony, carrying a penalty of up to 5 years' imprisonment, up to a $10,000 fine, or both. See §§ 29-908 and 28-105.

In this case, the sentences imposed were within the statutorily prescribed limits. The fact that the sentence for felony failure to appear was ordered to be served consecutively rather than concurrently does not constitute an abuse of discretion. See *State v. Sanders, ante* p. 183, 455 N.W.2d 108 (1990) (explaining that it is within the discretion of the trial court to direct that sentences imposed for separate crimes be served consecutively).

Considering (1) the defendant's comment in regard to stealing trucks that no one could do it as well as he, (2) that Zaritz was an active member of a gang of thieves that specialized in stealing expensive equipment and trucks, (3) the premeditation and deliberation surrounding the crimes of which Zaritz was convicted, (4) the magnitude of the theft, and (5) the defendant's disrespect for the law as shown by his failure

to appear for trial, it cannot be said that the trial court abused its discretion in sentencing the defendant. The sentences imposed are not excessive, and the defendant's assignment of error in that regard is meritless.

The defendant's convictions and sentences are affirmed.

AFFIRMED.